**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA BREUNLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 07 C 4627 |
| v. ) | |
| ) | Magistrate Judge Nan R. Nolan |
| VILLAGE OF OAK PARK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cynthia Breunlin brings this action against her former employer, the Village of Oak Park (the "Village"), alleging that she was terminated in retaliation for taking a leave of absence in violation of the Family and Medical Leave Act ("FMLA"). For the reasons stated below, the Village's Motion to Compel [17] is denied.

### I.  Background

Breunlin began her employment with the Village as a Housing Programs Manager in 1997. In March of 2007, Breunlin took a leave of absence pursuant to the FMLA for major depression with generalized anxiety disorder. Prior to Breunlin's leave of absence, the Village was in the process of investigating allegations of improper activity involving the Village's Single Family Housing Rehabilitation Program (the "Single Family Program") which Breunlin was responsible for managing. After the approval of her psychiatrist, Breunlin returned to work. On August 1, 2007, Breunlin was terminated. Breunlin claims that she was terminated in retaliation for exercising her rights under the FMLA. The Village denies that it retaliated against Breunlin. It says Breunlin was terminated for a legitimate, nonretaliatory reason, namely the problems in the Single Family Program which she managed.

The Village complains that Breunlin has failed to produce any documents or answer deposition questions related to the medical condition that triggered her need for FMLA leave. The Village seeks an order compelling Breunlin to answer all deposition questions regarding the medical condition that triggered her request for medical leave under the FMLA, produce all medical records in her possession related to that condition, and authorize the medical providers who diagnosed and/or treated her condition to produce her medical records. Breunlin opposes the Village's motion to compel on the grounds that the information sought is protected from disclosure by the psychotherapist-patient privilege and is irrelevant to her FMLA retaliation claim.

## II. Discussion

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Magistrate judges are granted broad discretion in addressing and resolving discovery disputes. Weeks v. Samsung Heavey Indus., Co., Ltd., 126 F.3d 926, 943 (7th Cir. 1997). Because the analysis of whether Breunlin waived the psychotherapist-patient privilege by placing her mental condition at issue dovetails with the relevancy question, Breunlin's relevancy objection is appropriately considered in the Court's at-issue waiver analysis.

Federal common law recognizes a psychotherapist-patient privilege. In Jaffee v. Redmond, 518 U.S. 1, 15 (1996), the United Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." The Jaffe court also noted that "[l]ike other testimonial privileges, the patient may of course waive the protection." Id. at 16 n.14. The Court did

not define the contours of the psychotherapist-patient privilege or address when or how it can be waived. Id. at 18.

"If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." Doe v. Oberweis Diary, 456 F.3d 704, 718 (7th Cir. 2006); see also Santelli v. Electro-Motive, 188 F.R.D. 306, 308 (N.D. Ill. Aug. 19, 1999) (stating "[o]ne way a privilege holder can waive the privilege is by affirmatively putting the privileged communications directly at issue in a lawsuit."). As Judge Kennelly observed in Santelli, "[a] party cannot inject his or her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues." Santelli, 188 F.R.D. at 309.

The issue in Santelli was "whether a Title VII plaintiff puts privileged communications with her psychotherapist at issue, and thus waives her privilege, by seeking to recover damages for emotional distress." Santelli, 188 F.R.D. at 308. The Santelli court held that the plaintiff had successfully avoided waiver of her psychotherapist-patient privilege by limiting the scope of her emotional distress claim to "compensation for humiliation, embarrassment, and other similar emotions." Id. at 309. At trial, the Santelli plaintiff was precluded from introducing the fact or details of her treatment, her symptoms or conditions that she suffered, and evidence regarding a medical or psychological disorder. Id. She was allowed to testify "only that she felt humiliated, embarrassed, angry or upset because of the alleged discrimination." Id. This Court has previously followed the Santelli distinction. See Saket v. American Airlines, 2003 WL 685385, at *1 (N.D. Ill. Feb. 28, 2003).

Breunlin's complaint alleges one claim: retaliation in violation of the FMLA. She asserts as part of her damages in this case that she suffered "extreme mental anguish" and "painful embarrassment among her friends and co-workers" as a result of the Village's actions. Cmplt. ¶ 26. Breunlin says she is seeking compensatory damages that include "general anxiety and stress." There is no evidence in the record that Breunlin has received psychiatric treatment for the mental anguish allegedly caused by the Village's termination. Breunlin does not intend to call her treating physician, psychiatrist, psychotherapist or an expert witness to advance her claim for mental anguish. Breunlin also says that she will not inject into the case either the fact of her treatment or any symptoms or conditions that she may have experienced for the purposes of proving her damages. Pl's Resp. at 6. Given Breunlin's representations, the Court finds that she has agreed to the Santelli limitations and she has not put her mental state at issue in this case by seeking damages for mental anguish and embarrassment.[1]

The Village's main argument in support of its motion is that Breunlin has put her medical condition at issue and waived the psychotherapist-patient privilege "by alleging that the only reason she was terminated was in retaliation for taking medical leave for stress-related depression." Def's Reply at 4. According to the Village, "Breunlin's stress-related

---

[1] In a footnote, the Village states that "[t]he psychotherapist-patient privilege does not apply to medical providers that are not psychotherapists. Therefore, no such privilege applies to the records of Breunlin's general practitioner, Dr. Peoples." Def's Reply at 4 n.2. The Supreme Court held in Jaffee that the psychotherapist privilege covers confidential communications made to licensed psychiatrists, psychologists, and social workers in the course of psychotherapy. Jaffee, 518 U.S. at 1931-32. Because the Village has not developed its argument in any meaningful way, the Court is not persuaded that the privilege would never extend to confidential communications made to a licensed physician in the course of psychotherapy. Even if the psychotherapist privilege did not cover communications made to Dr. Peoples, Dr. Peoples' records are irrelevant for the reasons explained in this Opinion and thus, not discoverable.

depression and the cause(s) of her condition are at the very heart of this case." Id.[2]

The Village explains that as a result of its investigation of the Single Family Program which Breunlin managed, the Village Manager determined that Breunlin's lack of oversight and mismanagement of the department had contributed substantially to the problems in the program. The Village says it terminated Breunlin's employment not because she took FMLA leave but rather because the Village Manager no longer had confidence in her ability to effectively correct the problems in the Single Family Program and manage the program on an ongoing basis. The Village suspects that its investigation of the Single Family

---

[2] The Village also argues that an employer is not barred from challenging an employee's entitlement to FMLA leave in subsequent litigation if it fails to do so through the certification process at the time the leave is requested. It remains unclear from the briefing, however, whether the Village intends to challenge Breunlin's entitlement to FMLA leave. Def's Motion at 5 (stating "the primary reason the Village is seeking the records is to corroborate the legitimate non-retaliatory reasons for Breunlin's termination, not to challenge Plaintiff's entitlement to leave"); Def's Resp. to Pl's Surreply at 4 n.3 (stating "[w]hile the Village did assert that its primary reason for seeking Breunlin's medical records was to corroborate the legitimate, non-retaliatory reasons for her termination, it never stated that this was the 'sole' reason for its motion. The Village has not waived its right to challenge Breunlin's qualification for FMLA leave."). Because the Village has not said it intends to challenge Breunlin's entitlement to leave, the Court considers its motion as asserting only that Breunlin's medical records will corroborate its legitimate, nonretaliatory reason for her termination.

Furthermore, the Village cites no case law supporting its assertion that to establish her FMLA retaliation claim, Breunlin must prove that her condition qualified her for FMLA leave. Def's Resp. to Pl's Surreply at 4. Without deciding the question, the Court doubts that Breunlin's claim for retaliation under the FMLA is dependent on her establishing a serious health condition. The FMLA prohibits an employer "from discriminating against employees or prospective employees who have used FMLA leave," regardless of whether or not the employee was actually suffering from a serious health condition. See 29 C.F.R. § 825.220(c) (also stating employers "cannot use the taking of FMLA leave as a negative factor in employment action, such as hiring, promotions or disciplinary actions."); see also Squibb v. Memorial Medical Center, 497 F.3d 775, 786 (7th Cir. 2007) (holding that in an ADA action, a finding that the plaintiff is not disabled does not foreclose her retaliation claim); Cassimy v. Bd. of Educ. of Rockford Publ. Schs., 461 F.3d 932, 938 (7th Cir. 2006) (stating "[e]ven if [plaintiff] was not disabled, it would still violate the statute if the Board had retaliated against him for attempting to raise a good-faith claim under the ADA.").

Program and "the real possibility that Breunlin would be terminated or face criminal prosecution was the catalyst for her requesting leave." Def's Reply at 4. The Village "believes that Breunlin's medical records will corroborate that Breunlin knew her job was in jeopardy before she took FMLA leave or even had a need to request medical leave, thus supporting the Village's defense that Breunlin's termination was not in retaliation for taking a leave of absence." Def's Reply at 5. The Village further believes that "[i]f Breunlin's condition was indeed caused by the Village's investigation and fear of job loss, this would constitute an admission that she knew the Village's intent at the time she requested leave, which is not only relevant but would defeat her retaliation claim." Def's Resp. to Pl's Sur-Reply at 1. The Village therefore concludes that "the events that led to Breunlin requesting leave, including any information regarding the cause of the condition, are clearly at issue and relevant to this case." Def's Reply at 5.

Breunlin responds that any evidence of a legitimate, nonretaliatory reason should "exist independently from any examination of medical records and the Defendant could not have relied upon the medical records to effect their 'legitimate' reason since they did not know anything then about the records they seek know." Pl's Resp. at 3.

The Court rejects the Village's argument that the "fundamental and dispositive issue" in this case is the cause of Breunlin's stress and corresponding FMLA leave. Breunlin's pre-termination stress-related depression and the causes of that condition are not at issue. The ultimate issue in this case is whether Breunlin was terminated because she used FMLA leave. It is apparently the Village's view that if Breunlin believed she was going to be terminated for performance reasons before she took FMLA leave (which the Village imagines the medical records may confirm), her belief tends to support or corroborate the

Village's assertion that she was terminated for performance reasons and not a retaliatory reason. Evidence of Breunlin's pre-FMLA leave beliefs which may be contained in her medical records is not going to help the Village rebut Breunlin's retaliation claim. What Breunlin supposedly believed is irrelevant to demonstrating that the Village's proffered reason for Breunlin's termination–the Village Manager's lack of confidence in her abilities–is not pretextual. The only relevant inquiry is whether the employer (the Village) honestly believed the reason it offers. Little v. Ill. Dept. of Revenue, 369 F.3d 1007, 1015 (7th Cir. 2004) (stating "[t]he analysis of pretext focuses only on what the decisionmaker, and not anyone else, sincerely believed."); Sanchez v. Henderson, 188 F.3d 740, 746 (7th Cir. 1999) (stating "[t]he pretext analysis seeks to uncover the true intent of the defendant, not the belief of the plaintiff."). Whether the Village terminated Breunlin for a legitimate, non-retaliatory reason is demonstrated not through examining Breunlin's confidential communications to see if she suspected her job was in jeopardy before she took FMLA leave, but through examining the Village Manager's motives for terminating Breunlin. Lewis v. School Dist. #70, 2008 WL 1745530, at * 8 (7th Cir. April 17, 2008) (stating plaintiff in FMLA retaliation claim "need not prove that retaliation was the *only* reason for her termination; she may establish an FMLA retaliation claim by 'showing that the protected conduct was a substantial or motivating factor in the employer's decision.'").

Moreover, the Village's briefing fails to recognize the difference between an FMLA discrimination/retaliation claim and an interference/entitlement claim. "[T]he difference is that the first type of claim requires proof of discriminatory or retaliatory intent while the latter requires only proof that the employer denied the employee his or her entitlements under the Act." Kauffman v. Federal Express Corp., 426 F.3d 880, 884 (7th Cir. 2005). In other

words, "[w]hen an employee alleges a deprivation of the[] substantive guarantees, the employee must demonstrate by a preponderance of the evidence only entitlement to the disputed leave." King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir. 1999).

> In contrast to what an employee must show to establish a deprivation of a substantive guarantee under the Act, when an employee raises the issue of whether the employer discriminated against an employee by taking adverse action against the employee for having exercised an FMLA right, the question of intent is relevant. The issue becomes whether the employer's actions were motivated by an impermissible retaliatory or discriminatory animus.

Id. Consistent with this distinction, an employer may be entitled to discover a plaintiff's medical records in an FMLA interference/entitlement case because the issue of whether the plaintiff suffered from a "serious health condition" is critical to determining the plaintiff's entitlement to the disputed leave. See Brown v. Automative Components Holdings, LLC, 2008 WL 747562 (S.D. Ind. March 18, 2008); Chalimoniuk v. Interstate Brands Corp., 172 F.Supp.2d 1055 (S.D. Ind. Oct. 12, 2001). In contrast, neither the direct or indirect methods of proving retaliation at the summary judgment stage requires proof of entitlement to leave and thus, proof of a serious health condition. See Buie v. Quad/Graphics, Inc., 366 F.3d 496, 503 (7th Cir. 2004); King, 166 F.3d at 891-93.

None of the cases cited by the Village compel the conclusion that Breunlin's mental condition is at issue in this case. The Village has not cited a single case holding that a former employee places her psychological state at issue by bringing a FMLA retaliation claim (as opposed to a FMLA interference/entitlement claim) where the employer does not challenge that the employee was suffering from a serious health condition and thus entitled to leave, does not argue that the employee fraudulently obtained FMLA leave, and does not contend that the employee could not return to work after having taken FMLA leave. See Wynne v. Loyola Univ. of Chicago, 1999 WL 759401 (N.D. Ill. Sept. 3, 1997) (holding

in an ADA case in which the alleged disability was major depression that plaintiff placed her mental condition at issue because plaintiff's condition was relevant to a determination of disability under the Act); Metzger v. Francis W. Parker School, 2001 WL 910443 (N.D. Ill. Aug. 10, 2001) (holding plaintiff with alleged disability of attention deficit hyperactivity disorder and co-existing related emotional conditions placed mental health at issue in case by alleging disability discrimination under the ADA and intentional and negligent infliction of emotional distress); Brown, 2008 WL 747562 at *2 (holding in a case asserting an interference/entitlement claim under the FMLA that certain of plaintiff's medical records were relevant to the issue of whether plaintiff suffered from a "serious health condition" so as to qualify for FMLA leave); Darst v. Interstate Brands Corp., 512 F.3d 903 (7th Cir. 2008) (holding in an FMLA interference/entitlement action under the FMLA, the employee must demonstrate an entitlement to FMLA leave); Chalimoniuk, 172 F.Supp. at 1058 (same case as Darst and holding that plaintiff's medical records were relevant to defendants contesting whether plaintiff's absences qualified for FMLA leave in an action alleging, among other things, FMLA interference/entitlement and defendants' affirmative defense of fraud); Moody v. Honda of America, 2006 WL 1785464 (S.D. Ohio June 26, 2006) (holding with respect to a FMLA discrimination/retaliation claim, plaintiff's post-discharge records may be relevant to the scope and extent of relief available if employer contends plaintiff was unable to return to work after her FMLA leave); Gilson v. Evergreen, 2005 WL 3841864 (W.D. Wash, Nov. 1, 2005) (in FMLA case challenging plaintiff's termination, plaintiff voluntarily provided releases for medical records related to the treatment of the specific health condition for which he claimed FMLA entitlement because defendant challenged whether plaintiff suffered from a serious health condition and court held defendant's request for general

medical release was overbroad).  Again, Breunlin claims only that she was terminated in retaliation for taking medical leave under the FMLA.  She does not allege a deprivation of the FMLA's substantive guarantees by the Village.  Breunlin's claim turns on the Village's motive for discharging her and not on whether she was entitled to leave for a serious health condition.

### III.    Conclusion

For these reasons, Breunlin's objections to production of her medical records are sustained and the Village's Motion to Compel [17] is denied.

**E N T E R :**

*Nan R. Nolan*

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated:  April 29, 2008**