# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CYNTHIA BREUNLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07 C 4627 |
| | ) |
| VILLAGE OF OAK PARK, | ) Magistrate Judge Nan R. Nolan |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cynthia Breunlin has filed suit against the Village of Oak Park (the "Village"), alleging that Village Manager Thomas Barwin terminated her employment on August 1, 2007 in retaliation for a leave of absence she took under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* Currently before the court is Breunlin's Motion to Compel. For the reasons set forth below, the motion is denied.

## BACKGROUND

Breunlin began her employment with the Village in 1997 as a Housing Programs Manager. In that position, she oversaw multiple housing programs, including the Single Family Housing Rehabilitation Program (the "Single Family Program"). Sometime in early 2006, the Village hired K & H Consulting Services ("K & H") to review the operation of the Single Family Program in response to allegations of improper activity. The Village also hired William Keefe of R.E. Walsh & Associates in January 2006 to investigate potential improprieties in the Program. In March 2007, Breunlin took a leave of absence under the FMLA for major depression with generalized anxiety disorder. Breunlin later returned to work with her psychiatrist's approval, but the Village terminated her employment on August 1, 2007, purportedly because she violated and failed to implement regulations set forth by the U.S. Department of Housing and Urban Development ("HUD").

In her motion to compel, Breunlin originally sought production of seven categories of documents and information. (Pl. Mot., at 1.) At a hearing on June 18, 2008, the court instructed

the parties to conduct a Rule 37 conference, and to meet and confer in a good faith effort to resolve their dispute. The court understands that the parties have now resolved all but the following three requests:

1. A copy of all billing statements and payments made to K & H from 2004 to 2008;

2. All documents relating to prior investigations for the Village done by William Keefe and R.E. Walsh; and

3. The bates numbers for all documents provided that show action taken by the Village after William Keefe's report(s).

(Def. Resp., at 2.) The court considers each below.

## DISCUSSION

A party "may obtain discovery regarding any matter that is relevant and not privileged." *Semien v. Life Ins. Co. of N. America*, 436 F.3d 805, 813 (7th Cir. 2006) (citing FED. R. CIV. P. 26(b)(1)). The Federal Rules of Civil Procedure "provide a court with broad discretion in resolving discovery disputes" and, thus, "[a] motion to compel discovery is granted or denied at the discretion of the trial court." *Meyer v. Southern Pacific Lines*, 199 F.R.D. 610, 611 (N.D. Ill. 2001).

### A. Billing Statements

Breunlin first seeks billing statements and other documents reflecting payments made to K & H. The Village has agreed to produce a copy of the company's report, but argues that the billing statements are not relevant to Breunlin's retaliation claim. Breunlin claims that the Village only hired K & H because she contacted the company in an effort to improve the Village's housing department and make its policies consistent with HUD regulations. (Pl. Reply, at 2.) She contends that the billing statements "will show that the Defendant paid *a lot* of money" for the K & H report, but that the Village "chose *not* to fully implement these recommendations in satisfaction of HUD policy." (*Id.* at 2-3 (emphasis in original).) In Breunlin's view, the billing statements will

2

demonstrate that the Village is trying to "pin the after-effect" of its own HUD policy violations onto her. (*Id.* at 3.)

Even assuming that the Village paid a lot of money to K & H, which would be reflected in the billing statements, Breunlin fails to explain how that fact has any bearing on her termination. She does not suggest that the billing statements themselves reflect the Village's purported HUD violations – that information is presumably set forth in the K & H report, which Breunlin already has. Nor does Breunlin claim that the statements indicate which of K & H's recommendations the Village chose not to implement. She does argue that the statements will somehow show that she "did everything in her power to improve the program as directed by HUD," but she provides absolutely no basis for this unlikely assertion. Even under the broad definition of relevance contemplated by the discovery rules, Breunlin has not met her burden in this case. *See Spano v. The Boeing Co.*, No. 3:06-CV-00743-DRH-DGW, 2007 WL 4390366, at *1 (S.D. Ill. Dec. 14, 2007) ("The Court is guided by the general principle that the discovery rules are to be accorded broad and liberal treatment.") (internal quotations omitted); *Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 523 (N.D. Ill. 2005) (denying motion to compel financial records where there was no showing of relevancy). Breunlin's motion to compel the K & H billing statements and payment documents is denied.

### B.     Prior Investigations

The Village has provided Breunlin with documents related to the 2006 investigation that William Keefe of R.E. Walsh & Associates conducted regarding the Single Family Program. Breunlin now seeks all documents relating to prior investigations conducted by Mr. Keefe and his company. She claims that "this request is directly relevant and likely to lead to admissible evidence showing that the Village did not fire other managers employed by the Village who had not taken FMLA leave . . ., despite their being responsible for huge department cost overruns, improper actions of . . . their subordinates, and terrible budget process/huge deficits while under their

supervision." (Pl. Mot., at 4.) The Village argues that Mr. Keefe and R.E. Walsh conducted only one other investigation in approximately 2002 under the direction of the former Village Manager, Carl Swenson. In the Village's view, that investigation, which concerned "misconduct by water and sewer maintenance employees working in the Village's Public Works Departments," has nothing to do with Breunlin or her termination. (Def. Resp., at 4; Def. Reply, at 6.)

The court agrees that an investigation occurring five years prior to Breunlin's termination, under the direction of a different Village Manager who was not involved in Breunlin's discharge, and involving different misconduct is not reasonably calculated to lead to the discovery of any relevant or admissible evidence in this case. *See, e.g., Ellis v. United Parcel Serv., Inc.*, 523 F.3d 823, 826 (7th Cir. 2008) ("[T]o be similarly situated, a manager must have been treated more favorably by the same decisionmaker that fired the [plaintiff]."); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 667 (7th Cir. 2006) (employees were not similarly situated where they did not engage in similar misconduct and were not fired by the same individual); *Garrison v. Nygren*, No. 00 C 50013, 2003 WL 21730132, at *4 (N.D. Ill. July 23, 2003) ("A span of five years between the allegedly similarly situated individuals seems remote.") Contrary to Breunlin's assertion, this is not a situation where the individual in question is comparable in all respects, but just has a different job title. *Compare Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 743 (7th Cir. 1999) ("An employer cannot insulate itself from claims of . . . discrimination simply by providing different job titles to each of its employees.")

Breunlin also contends that documents regarding prior investigations are relevant to impeach Mr. Keefe. (Pl. Reply, at 3-4.) Specifically, Breunlin argues that Mr. Keefe "served as a hired gun for the Village" and, thus, may have a "predisposition . . . to find misconduct on the part of Village employees." (*Id*. at 4.) As a preliminary matter, Breunlin has already deposed Mr. Keefe in this case and had a full opportunity to explore any purported bias in his investigation at that time. (Def. Reply, at 5.) Moreover, the person responsible for Breunlin's discharge – Mr. Barwin – was not responsible for hiring Mr. Keefe in January 2006. In fact, Mr. Keefe submitted a draft report to

4

the Village before Mr. Barwin was even hired in August 2006. (*Id.* at 2.) Breunlin has offered nothing to suggest that Mr. Keefe's prior investigation in 2002 will somehow reveal any information tending to show that Mr. Barwin fired her five years later due to her FMLA leave. *See Carter v. Tennant Co.*, No. 02 C 1925, 2003 WL 21418231, at *9 (N.D. Ill. June 16, 2003) (no showing of pretext where proffered evidence "provide[d] no insight into the motives of the actual decision makers.")

Breunlin's motion to compel documents related to prior investigations conducted for the Village by William Keefe of R.E. Walsh & Associates is denied.

### C. Bates Numbers

Breunlin finally insists that the Village should identify specific bates numbers for documents it produced that show the Village's "response or subsequent action taken by the Village to investigation reports created by William Keefe and R.E. Walsh & Associates, Inc. for the Village," as requested in Supplemental Request for Production of Documents No. 5. (Def. Reply, at 8.) The Village apparently referenced specific bates numbers for certain requests, but found it overly burdensome to do so with respect to Request No. 5. Indeed, the request as written arguably could encompass a majority of the more than 2,000 documents produced in this case, including documents related to (1) correspondence with HUD; (2) witness interviews; (3) Breunlin's suspension; (4) the moratorium on new Single Family projects; (5) Breunlin's termination; and (6) new policies and guidelines in the Housing Department. (Def. Resp., at 8; Def. Reply, at 8.)

Rule 34(b) requires that a party producing documents for inspection must "'produce them as they are kept in the usual course of business' or 'organize and label them to correspond with the categories in the request.'" *American Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 410 (N.D. Ill. 2007) (quoting FED. R. CIV. P. 34(b)). "[A]ccording to the plain language of Rule 34, a responding party has no duty to organize and label the documents if it has produced them as they are kept in the usual course of business." *Hagemeyer N. Amer., Inc. v. Gateway Data Sciences*

5

*Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004). *See also Mohawk Mfg. & Supply Co. v. Lakes Tool Die & Eng'g, Inc.*, No. 92 C 1315, 1993 WL 72318, at *3 (N.D. Ill. Mar. 11, 1993).

The Village claims that it has produced the requested documents "exactly as they have been maintained by the Village in the ordinary course of business." (Def. Resp., at 7; Def. Reply, at 9.) Breunlin disagrees, arguing that the documents "did not come directly from the Village" but were labeled, sorted and produced by the Village's counsel "as they saw fit" in a deliberately "haphazard" manner. (Pl. Reply, at 8.) Breunlin cites cases stating that when documents have been moved to a storage facility, the producing party must "show that the way in which the documents are kept [in storage] has not changed from how they were kept in the usual course of business." *See, e.g., In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 363 (N.D. Ill. 2005).

The court cannot determine from the briefs whether the documents in question actually came from a storage facility. Nevertheless, it is clear that Rule 34 is designed to preclude litigants from "deliberately mixing critical documents with masses of other documents to hide their existence or obscure their significance." *In re Sulfuric Acid*, 231 F.R.D. at 363. Courts view documents produced from storage facilities with caution because "once documents not used with regularity are sent to a storage facility, . . . then it is no longer essential that they be kept with any degree of organization." *Id.* Here, the court finds no support for Breunlin's charge that the Village has deliberately tampered with the documents, engaged in a "document dump," or otherwise attempted to hide responsive documents. The court accepts the Village's representation that it "carefully reviewed each request and produced only those documents which were relevant and responsive," and did so "in a sequence dictated by the timing of Plaintiff's . . . requests." (Def. Resp., at 10; Def. Reply, at 9.) *Compare Northern Crossarm Co. v. Chemical Specialties, Inc.*, No. 03 C 415-C, 2004 WL 635606, at *1 (W.D. Wis. Mar. 3, 2004) (Rule 34(b) is an "anti-sabotage provision: a party may not dump its files into a mail cart, stir well, then wheel it to opposing counsel.")

6

Significantly, the Village has now submitted a list showing the source files for all documents produced in this case, and has repeatedly confirmed that it produced the documents "exactly as they have been maintained by the Village in the ordinary course of business." (Def. Reply, at 9 and Ex. A.) On this record, the Village's production is sufficient for purposes of Rule 34. *See, e.g., Hagemeyer N. Amer.*, 222 F.R.D. at 598 (documents located in storage facility were properly made available to the plaintiff where they were kept in clearly labeled boxes; no attempt was made to hide responsive documents among nonresponsive documents; and charges that the facility was a "document dump" were unfounded).

The court also declines to order the Village to provide a new Rule 34 response with a summary list of all documents produced to date. Breunlin claims that "[s]ince the Defendant produced some, but not all of the documents it had previously objected to, it is necessary to have a comprehensive document wherein the Defendant makes it clear exactly what they produced." (Pl. Reply, at 10.) Not surprisingly, Breunlin cites absolutely no authority for this proposition. According to Breunlin, her counsel will not be able to cross-examine defense witnesses "based solely on various letters from counsel indicating documents they have agreed to later produce." (*Id.*) Breunlin offers no explanation, however, for why the Village is either required, or better equipped to review the parties' correspondence and compile a list of documents that have been produced in this case. Breunlin is certainly capable of creating such a list herself and is free to do so.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Compel [Doc. 37] is denied.

7

ENTER:

Dated: 07/17/08

*Nan R. Nolan*
_____
NAN R. NOLAN
United States Magistrate Judge